Betty Crisp **FISCHER**, b/n/f Sherman **T.** Crisp, Appellant,

v.

Dennis L. **FISCHER**, Appellee.

Supreme Court of Tennessee.

Feb. 22, 1972.

Jerry Shattuck, Davis & Shattuck, Clinton, for appellant.

Louis C. Woolf, McCampbell, Young, Bartlett & Woolf, Knoxville, for appellee.

## OPINION

ERBY L. JENKINS, Special Justice.

Plaintiff-in-error, Betty Crisp Fischer, sued defendant-in-error, Dennis L. Fischer for damages for personal injuries sustained in an automobile accident while plaintiff-in-error was riding as a passenger in defendant-in-error's automobile. Defendant-in-error filed a plea in abatement alleging plaintiff-in-error was his lawful wife at the time of the commencement of the suit and was still his wife at the time of the hearing on the plea in abatement. Prior to the hearing on the plea the parties stipulated that the parties were unmarried at the time of the accident, were subsequently married and were husband and wife at the time of the hearing on the plea in abatement. It was also stipulated that at the time of the accident and the injuries defendant-in-error was insured by a liability insurance policy.

The trial judge sustained the plea in abatement, and the plaintiff-in-error has appealed. Her contentions in this Court are that the rule of interspousal immunity should be reexamined by this Court, and the Court should announce a rule permitting interspousal suits for damages for personal injuries. It is also contended that the denial of the wife of the right to sue constitutes denial of due process and equal protection of the law contrary to the Fourteenth Amendment of the Constitution of the United States and Article 1, §§ 8 and 17 of the Constitution of the State of Tennessee.

The question of common law interspousal tort immunity and the effect thereon of liability insurance covering the husband was considered by this Court in Monk v. Ramsey, 223 Tenn. 247, 443 S.W.2d 653 (1969). It was there held the marriage of the parties subsequent to the tortious injury extinguished the antenuptial cause of action and the fact one spouse was insured did not alter the case.

No new arguments are advanced for departing from Monk and we can think of none.

No authority is cited for the proposition that this common law rule of interspousal immunity is unconstitutional. It is suggested that the doctrine, since it operates to prevent a spouse from suing, while permitting others to sue results in an invalid classification. Knoxtenn Theatres, Inc. v. McCanless, 177 Tenn. 497, 151 S.W.2d 164 is cited. But, in the case cited, it is stated that the classification is not unconstitutional if it bears equally on all who come into like situations and circumstances. That, of course, is the case here. The common law rule which antedates our constitution, and was adopted as the law of the land by our constitution (Article 10, Constitution of 1796; Article 11, § 1, Constitution of 1870) is based on the proposition that husband and wife are one in the eyes of the law and since one cannot sue one's self, there can be no cause of action between the elements of this unity. This rule applies equally to all in like situations. While modern attitudes toward marriage and the home and family and woman's liberation tend to disparage the relationship and its unity, in our opinion the rule is for the best good of the marital relationship, and the "classification" consequent thereto is not invalid.

No authority is advanced for the proposition that this rule violates the equal protection and due process clauses of the Fourteenth Amendment. We know of no such authority. While these clauses have been so construed in the past as to bring practically every existing human relationship into question as to whether it is absolutely on the same level with every other like relationship, it has not yet been applied to domestic relations, and we hope that it never will be so applied. If the marital relationship and its common law

consequences ever come to be considered as a suitable subject for the enforcement of the peculiar notions of a majority of a Supreme Court as to what would be "fair play" between such parties, (which is approximately the present definition of due process), the present disorder and disarray in our society and in our courts will be as a monk's cell compared to an eighteenth century madhouse.

The judgment of the trial court is affirmed.

DYER, C. J., and CRESON, HUMPHREYS, and McCANLESS, JJ., concur.